IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

BROOKE KEETON,

    Plaintiff,

v().                                           Civil Action No. 3:24-cv-321

JAMES ROANE DUDLEY,
et al().,

    Defendants.

**MEMORANDUM OPINION**

This matter is before the Court on Defendants' MOTION TO DISMISS PURSUANT TO RULE 12(B)(6) (ECF No. 36) (the "MOTION"), Defendants' BRIEF IN SUPPORT OF MOTION TO DISMISS (ECF No. 37), PLAINTIFFS' MEMORANDUM IN OPPOSITION TO THE OFFICER DEFENDANTS' MOTION TO DISMISS (ECF No. 41), and Defendant's RESPONSE IN SUPPORT OF MOTION TO DISMISS (ECF No. 46). Having reviewed the papers and for the reasons set forth below, the MOTION will be DENIED.

**BACKGROUND**

**I. Procedural History**

On May 8, 2024, Plaintiff Brooke Keeton ("Keeton") filed the COMPLAINT (ECF No. 1) seeking judgment against Defendants James Roane Dudley, M.D. ("Dr. Dudley"), Nurse Angela Epps ("Nurse Epps"), EMT Brendan Farmer ("EMT Farmer"), RMA Savannah Shropshire

("RMA Shropshire"), EMT Louis Bermudez ("EMT Bermudez"), Correctional Officer Sigifredo Luna ("Officer Luna"), Correctional Officer Gabriel Loesel ("Officer Loesel"), and Lieutenant Michael Yerby ("Lt. Yerby") on two counts under Section 42 U.S.C. § 1983. On July 11, 2024, Keeton filed the First Amended Complaint ("FAC")(ECF No. 29) which added allegations regarding Thompson v. McKenney, et al., Civil Action No. 3:17cv182 (E.D. Va.). In COUNT I, Keeton has alleged a violation of the Fourteenth Amendment for the failure to receive constitutionally adequate medical care as a pretrial detainee.

On July 26, 2024, Lt. Yerby, Officer Luna, and Officer Loesel ("Officer Defendants") filed the MOTION, and moved to dismiss COUNT I of the FAC, as to the Officer Defendants, for failure to adequately plead that the Officer Defendants acted with deliberate indifference to Keeton's medical condition. The relief being sought by the MOTION pertains only to the Officer Defendants.

## II. Factual Background

The relevant facts alleged in the FAC relating to the MOTION, taken in the light most favorable to Keeton, concern the interactions between the Officer Defendants and Keeton. These interactions occurred in the relevant backdrop of Keeton's confinement in Northern Neck Regional Jail ("NNRJ"), and how the staff at NNRJ reacted to and treated her medical emergencies.

2

### a. Keeton and the Northern Neck Regional Jail

On May 19, 2022, Keeton and her aunt, Amy Carter, were arrested and booked into Gloucester County Jail, Virginia. (ECF No. 29, ¶ 17). On May 20, 2022, Gloucester County Jail staff documented in an intake record that Keeton had "IV Track Marks" and used "Percocet IV." Id. Keeton had a documented history of intravenous ("IV") drug use. Id. ¶ 16. Keeton and Carter were transferred later that day from Gloucester County Jail to NNRJ, and the Gloucester County intake form was alleged to have been transmitted to NNRJ at the same time. Id. ¶ 18.

Upon transfer, Keeton alleges that she became seriously ill due to a septic infection. Id. ¶ 19. Keeton and Carter alerted jail nurses and correctional officers that she required medical attention, but the officials advised Keeton that she needed to go through a formal medical request process. Id. ¶ 19. Keeton's request for the request forms went unanswered. Id. ¶ 19.

Later that day, Officer Luna, a correctional officer, performed Keeton's intake screening for NNRJ. Id. ¶ 20. He documented that Keeton was injured or bleeding and had difficulty moving. Id. Although Keeton advised Officer Luna that she had a history of IV drug use, Officer Luna recorded that Keeton had no history of drug or alcohol abuse. Id. ¶¶ 21, 25. The notice given by Keeton notwithstanding, Officer Luna did not perform a Clinical Opiate Withdrawal Scale ("COWS") assessment, which assesses risk

3

of dangerous opiate withdrawal symptoms. Id. ¶¶ 23-24, 26. A review of the information transmitted from Gloucester County Jail would have prompted the same assessment. Neither the MOTION nor the briefs deny the transmission of the Gloucester County records. Moreover, Officer Luna concluded that Keeton did not require medical attention, even though he noted that Keeton was in "severe pain." Id. ¶ 23.

That evening, Keeton complained to EMT Farmer that she had "severe back pain." Id. ¶ 30. EMT Farmer did not conduct an evaluation of Keeton or consult Dr. Dudley. Id. Keeton also reported severe chest and back pain that evening to Nurse Epps. Id. ¶¶ 32-33. For reasons neither explained nor readily apparent, Nurse Epps did not conduct a medical evaluation, take Keeton's vital signs, or notify Dr. Dudley of the situation. Id.

Keeton's condition worsened over the next few days, and she became unable to walk. Id. ¶¶ 36-37. Other inmates began taking care of her basic needs, such as carrying her around and showering her. Id. Officer Luna is alleged to have observed Keeton's debilitated state and then remarked: "That's why we don't do drugs." Id. ¶ 38.

On May 24, four days after admission to NNRJ, Keeton completed a medical request form, in which she wrote ""I have chest pains can't walk can't move[.]" Id. ¶¶ 39-40. Nurse Epps received the form and took no action. Id. ¶ 41. That same day, Officer Loesel

4

issued a disciplinary offense against Keeton for "Failure to follow count procedure" as she could not stand up for count. Id. ¶ 42-44. Officer Loesel took no action to alert medical staff of her condition. Id. Keeton's condition worsened, as she was defecating herself and could no longer feed herself. Id. ¶ 45.

On May 25, Keeton submitted a request form asking NNRJ to retrieve her medical records. Id. ¶ 47. That day, five days after entering NNRJ, RMA Shropshire conducted a booking medical screening and noted Keeton's history of drug abuse and her chest pains. Id. ¶48. However, RMA Shropshire did not perform a COWS assessment before sending Keeton back to general population. Id. ¶¶ 49-50. The screening found no evidence of a skin infection. Id. On May 28, EMT Burmedez responded to a medical assistance request from Keeton for severe chest pain. Id. ¶ 53. EMT Bermudez had Keeton brought to the medical unit and took her vital signs. Id. EMT Burmedez denied Keeton's request for pain medication for the stated reason that he was "unable to confirm if [Ms. Keeton] received anything during pm pill call." Id. ¶ 54. Consequently, EMT Burmedez sent Keeton back to general population without any medical treatment, follow up, or consulting with Dr. Dudley. Id. ¶¶ 54-55. Lt. Yerby issued two disciplinary charges against Keeton based on this event, including "Faking a Medical Emergency" and "Delay and Hinder." Id. ¶¶ 56-57.

5

On May 29, Keeton again was brought to the medical section at NNRJ after reporting she was not feeling well. Id. ¶ 61. Keeton reported to Nurse Allen that she used opiates, she was experiencing diarrhea, and she was hearing and seeing things. Id. Nurse Allen took Keeton's vital signs, which were elevated, then performed a COWS assessment of Keeton, which found she was experiencing mild opiate withdrawal, and then called Dr. Dudley, who ordered Keeton to be put on detox protocol for nine days. Id. ¶¶ 60-63.

On May 31, EMT Farmer responded to Keeton for complaints of back pain, but EMT Farmer's notes inexplicably recorded that Keeton "stated no complaints at that time" and that Keeton "was sitting up and acknowledged my presence." Id. ¶ 66. There is no indication EMT Farmer physically evaluated Keeton or took her vital signs. Id. ¶ 66. But, shortly thereafter, EMT Farmer reported that "due to inmate complaining of back pain," he provided Keeton with medications, underwear, and a biohazard bag. Id. ¶ 67. Minutes after that, Keeton was taken from her cell to the medical section because she was "lethargic, diaphoretic, and tachypneic." Id. ¶ 68. Keeton saw Nurse Allen, who noted Keeton was "soiled in feces." Id. Nurse Allen took medical pictures, which revealed Keeton had developed a vicious decubitus ulcer. Id. Dr. Dudley examined Ms. Keeton and ordered she be sent to the hospital. Id. ¶ 69.

Keeton was transported to the hospital, where she was found to be in septic shock, and to have a Stage II decubitus ulcer

6

caused by prolonged immobility. Id. ¶ 70. Two days later, Keeton was incapacitated and placed on life support. Id. ¶ 71. The ulcer developed into a Stage IV sacral decubitus wound, requiring multiple surgeries. Id. ¶ 72. She also eventually underwent a heart valve replacement surgery to treat her septic infection and endocarditis. Id. ¶ 73.

## DISCUSSION

### I. Legal Standard

#### a. Rule 12(b)(6)

"A motion filed under Rule 12(b)(6) challenges the legal sufficiency of a complaint, considered with the assumption that the facts alleged are true." Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009) (cleaned up). The Court "must accept the factual allegations of the complaint as true and construe them in the light most favorable to the nonmoving party." Rockville Cars, LLC v. City of Rockville, 891 F.3d 141, 145 (4th Cir. 2018). So, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). But, "[a]lthough for the purposes of [a] motion to dismiss [the Court] must take all the factual allegations in the complaint as true, [it is] not bound to accept as true a legal

7

conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). Mere labels and conclusions declaring that the plaintiff is entitled to relief are not enough. Twombly, 550 U.S. at 555. Thus, "naked assertions of wrongdoing necessitate some factual enhancement within the complaint to cross the line between possibility and plausibility of entitlement to relief." Giacomelli, 588 F.3d at 193 (internal quotation marks omitted).

### b. Deliberate Indifference

The Fourth Circuit in Short v. Hartman recently adopted the growing approach that pretrial detainees can state a claim under the Fourteenth Amendment, based on a purely objective standard, for prison officials' deliberate indifference to excessive risks of harm. 87 F.4th 593, 604-605 (4th Cir. 2023). Before Short, the Fourth Circuit had consistently applied Eighth Amendment caselaw, which used a combined objective and subjective test for deliberate indifference claims of prisoners, to claims made by pretrial detainees under the Fourteenth Amendment. See, e.g., Stevens v. Holler, 68 F.4th 921, 931 (4th Cir. 2023). However, this approach was deemed irreconcilable with the Supreme Court's decision in Kingsley v. Hendrickson, 576 U.S. 389 (2015), and the prior precedent of the Fourth Circuit "applying a subjective deliberate indifference standard" to Fourteenth Amendment pretrial detainee claims was deemed "no longer tenable." Short, 87 F.4th 609-10 (citations omitted).

8

The Fourth Circuit's new approach to deliberate indifference by prison officials under the Fourteenth Amendment requires a pretrial detainee to plead that:

> (1) they had a medical condition or injury that posed a substantial risk of serious harm; (2) the defendant intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed; (3) the defendant knew or should have known (a) that the detainee had that condition and (b) that the defendant's action or inaction posed an unjustifiably high risk of harm; and (4) as a result, the detainee was harmed.

Short v. Hartman, 87 F.4th at 611.

The Short test differs from the prior subjective test in one meaningful aspect, that "[t]he plaintiff no longer has to show that the defendant had actual knowledge of the detainee's serious medical condition and consciously disregarded the risk that their action or failure to act would result in harm." Id. Now, it is sufficient for the plaintiff to show that the defendant's action or inaction was "objectively unreasonable." Id. To prove that an action or inaction was "objectively unreasonable," the plaintiff "must show that the defendant should have known of that condition and that risk, and acted accordingly." Id. However, this test still presents hurdles for plaintiffs to overcome, including hurdles specifically for medical needs claims against non-medical prison officials.

The objective element of the claim requires a "serious medical condition." Mays v. Sprinkle, 992 F.3d 295, 300 (4th Cir. 2021).

9

"A serious medical need is one 'that has either been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Lapp v. United States, 706 F. Supp. 3d 568, 577 (E.D. Va. 2023) (quoting Scinto v. Stansberry, 841 F.3d 219, 225 (4th Cir. 2016)).

Further, when a medical needs claim is brough against a non-medical prison official, a plaintiff must establish that the defendant: (1) "failed promptly to provide an inmate with needed medical care," (2) "deliberately interfered with the prison doctors' performance," or (3) "tacitly authorized or were indifferent to the prison physicians' constitutional violations." Dallas v. Craft, 2022 U.S. Dist. LEXIS 103750, at *35 (E.D. Va. June 9, 2022) (quoting Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990)).

## II. ANALYSIS

### A. Pretrial Detainee Status

COUNT I alleges that the Defendants, including the Officer Defendants, violated Keeton's constitutional right to be free from deliberately indifferent medical care while in pre-trial detention. Keeton brought this action under 42 U.S.C. § 1983, and claims her right to do so arises under the Fourteenth Amendment. The Court agrees. At all relevant times, Keeton was a pretrial detainee. Since Keeton was "a pretrial detainee and not a convicted

10

prisoner, the Fourteenth Amendment, and not the Eighth Amendment, governs [her] claim." Mays v. Sprinkle, 992 F.3d 295, 300 (4th Cir. 2021) (quoting Martin v. Gentile, 849 F.2d 863, 870 (4th Cir. 1988)). Keeton, as a pretrial detainee not convicted of any crime, is protected under the Fourteenth Amendment from being subjected to "any form of punishment." Id. (internal citations omitted).

**B. Keeton's Serious Medical Need**

To proceed with her deliberate indifference claim, Keeton must adequately allege a serious medical need. Lapp v. United States, 706 F. Supp. 3d 568, 577 (E.D. Va. 2023). The Court finds that Keeton has, for purposes of the motion to dismiss, adequately alleged facts establishing that Keeton had a serious medical need "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Id. (quoting Scinto, 841 F.3d at 225).

The Officer Defendants contend that Keeton cannot state a claim for deliberate indifference because the alleged conditions of "defecation, incontinence, or inability to move" are not "alleged in a manner that would make it obvious to the Defendants that there was a serious condition." (ECF No. 37, p. 3-4). However, based on the allegations of the FAC, which are taken as a whole and viewed in the light most favorable to Keeton, she was a severely debilitated individual during her time at NNRJ. Keeton made consistent complaints of severe chest and back pain, made

11

various pleas for medical assistance, complained of being delusional, was found defecating on herself, was unable to walk, was unable take care of basic needs such as cleaning or feeding herself, and at points was openly carried around in a lawn chair by other inmates. These allegations are adequate to demonstrate that Keeton had a "medical need . . . so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Id.; Sams v. Armor Corr. Health Servs., Inc., 2020 WL 5835310, at *21 (E.D. Va. Sept. 30, 2020)(finding that "consistent pleas for help and complaints" regarding a variety of ailments "readily satisfies the objective prong."); Tharrington v. Virginia, 2018 WL 4515899, at *8 (W.D. Va. Sept. 20, 2018)(holding, at a motion to dismiss, that repeated complaints of "severe pain related to surgery, falls, and other health issues" were adequate to establish a serious medical need). Indeed, if proved, the facts respecting the seriousness of the condition would compel a verdict in her favor and might even warrant summary judgment against the Officer Defendants.

### B. Officer Defendants

The Officer Defendants argue that Keeton has failed to state a claim as to each of the Officer Defendants, because the plaintiff is required to demonstrate that each government-official defendant, through their own individual actions, has violated the Constitution. (ECF No. 46, p. 1 (citing Mallory v. Dorchesters

12

County Detention Unit, 2024 U.S. Dist. LEXIS 87636 at *7 (S.C. Dist. Ct. 2024)). The Officer Defendants are correct that the analysis does not end at the showing of a serious medical need. The Court must examine whether there are adequate allegations regarding each Officer Defendant and whether their actions (or inactions) were objectively unreasonable. Short, 87 F.4th at 611.[1] The analyses as to each Officer Defendant are sufficient, if proved, to warrant judgment against them individually.

### 1. Officer Luna

For purposes of the MOTION, the FAC alleges two relevant interactions between Keeton and Officer Luna. First, Officer Luna conducted Keeton's intake screening, in which he noted that Keeton was injured or bleeding, had difficulty moving, and was experiencing "severe pain." (ECF No. 29, ¶ 23). Despite noting these issues, Officer Luna made no attempt to procure medical treatment on Keeton's behalf. Id. ¶ 26. The FAC further alleges that Officer Luna made no attempts to ascertain Keeton's medications during the intake screening. Id. ¶ 22. In his written assessment for the intake screening, Officer Luna marked that

---

[1] The Court will not address the Officer Defendants' argument that Keeton cannot establish the subjective prong of the deliberate indifference claim. (ECF No. 37, p. 6). As discussed above (supra, p. 8), the Fourth Circuit in Short jettisoned the subjective prong of the deliberate difference claim for pretrial detainees, and adopted the growing approach of only requiring the objective prong for claims brought under the Fourteenth Amendment.

13

Keeton was not in need of "medical attention ASAP," and recorded that Keeton had no history of drug or alcohol abuse, despite Keeton alleging that she expressly made Officer Luna aware of her history of IV drug use. Id. ¶¶ 21-25. And, Officer Luna is alleged to have had access to the information forwarded with Keeton from Gloucester County Jail.

The interactions between Officer Luna and Keeton are not solely confined to the intake screening. Officer Luna had another interaction with Keeton around May 23, 2022, three days after he performed the intake screening. Id. ¶¶ 35, 38. At that time, Keeton alleges that she was severely debilitated and had other inmates taking care of her basic needs, with one inmate even carrying her around in a plastic lawn chair because she could not walk under her own power. Id. ¶¶ 36-37. Keeton alleges that Officer Luna observed her in that debilitated state, and remarked "that's why we don't do drugs." Id. ¶ 38. That remark by Officer Luna goes directly against Officer Luna's own notation in the intake assessment that Keeton had no history of drug abuse. And, it bespeaks a summary of Officer Luna's general callous behavior towards a vulnerable detainee.

### 2. Officer Loesel

As to Officer Loesel, the relevant interaction with Keeton took place on May 24, 2022. On that day, Keeton alleges that Officer Loesel observed her in a debilitated condition, in which

14

she could not move or stand from her sleeping mat. Id. ¶ 42. That same day she had submitted a medical request form which stated: "I have chest pains can't walk can't move[.]" Id. ¶ 40. Officer Loesel, despite seeing Keeton in this run-down state, did not notify any medical staff of the issue nor did he take any action to procure medical treatment on Keeton's behalf. Id. ¶ 43. Instead, Officer Loesel issued a "Disciplinary Offense Report," in which he charged Keeton with "Failure to follow count procedures" because she did not, and could not, stand up for count. Id. ¶ 44. In total, Officer Loesel's behavior was as callous as Officer Luna's, maybe more so.

### 3. Lieutenant Yerby

For Lt. Yerby, the relevant interaction occurred on May 28, 2024. Early that morning, Keeton requested medical assistance because she was experiencing severe chest pains, and she reported that pain was radiating to her low back, legs, and hands. Id. ¶ 53. Keeton was brought to the medical unit, but upon examination the medical staff sent her back to her cell without any medication and without rendering any medical treatment. Id. ¶¶ 54-55. Lt. Yerby issued Keeton two disciplinary charges based on her requests for medical assistance for the severe chest pains. Id. ¶ 56. Specifically, the charges were for "Faking a Medical Emergency" and "Delay and Hinder." Id. ¶ 57. Like the behavior of Officer

15

Luna and Officer Loesel, Lt. Yerby's treatment of Keeton was utterly callous.

### C. Objective Unreasonableness of Officer Defendants

The FAC adequately alleges that each of the Officer Defendants' actions (and inactions) were objectively unreasonable. The FAC allegations show that Keeton was in open and active distress while confined in NNRJ and at the times that she was interacting with all of the Defendants. (See discussion supra, pp. 11-12). It is within the backdrop of an ongoing medical emergency that Keeton interacted with the Officer Defendants. Keeton alleges that 11 days passed while she was experiencing this ongoing medical emergency, and that this delay exacerbated her injuries. "Where a prisoner is showing outward signs of serious medical distress, courts have found that even a brief delay in calling for medical assistance may constitute deliberate indifference." Sams, 2020 U.S. Dist. LEXIS 181799, 2020 WL 5835310, at *29. Here, Keeton was having an open medical emergency, and the Officer Defendants delayed the treatment that Keeton would eventually receive by never inquiring about or requesting medical treatment on her behalf.

Further, Officer Luna was made aware of the medical issues that Keeton was facing directly from Keeton herself when he performed the intake screening. Officer Luna also observed Keeton in a debilitated state, and even made a remark about how drug use had led to her deteriorated condition. Similarly, the actions of

16

Officer Loesel and Lt. Yerby to issue disciplinary charges in the face of Keeton's medical emergencies, complaining of severe chest pains and being unable to stand, shows that they at least should have known that Keeton was experiencing a medical emergency. The allegations of the FAC make it plausible that Keeton had a serious medical need, the Officer Defendants knew or should have known of Keeton's serious medical need, and that the Officer Defendants delayed in facilitating medical care. See Dallas, 2022 U.S. Dist. LEXIS 103750 at *37 (finding deliberate indifference allegations sufficient where "all who observed [the inmate] could see the seriousness of his open and obvious medical condition" and the "plaintiff has alleged that these defendants at least delayed in facilitating medical care.") (cleaned up); Brown v. Mitchell, 327 F. Supp. 2d 615, 652 (E.D. Va. 2004) (finding triable issue of deliberate indifference where prisoner was suffering from "heavy sweating, vomiting, incoheren[t], and [unable] to walk" but patrolling guards "took virtually no action in response"). Therefore, the FAC adequately states a deliberate indifference claim against each Officer Defendant whose behavior, if proved, would readily warrant a finding of deliberate, callous indifference to the obvious medical needs of a vulnerable pretrial detainee.

17

## CONCLUSION

For the reasons set forth above, the MOTION will be DENIED.

It is so ORDERED.

/s/ RSP

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: October 15, 2024